## FERRERI'S CASE

### York.    Opinion September 23, 1927.

*A section of highway under actual construction may be considered the employers premises under the Workmen's Compensation law.*

*Not so when the portion of highway over which travel passes is completed and open for use by the public.*

*An injury to an employee while on a public highway on his way to his work is not an injury received in the course of his employment, nor one arising out of his employment.*

The completion of work on such a section of highway embracing only rounding up the shoulders of the road, building the concrete walls to culverts and placing guard-rails at appropriate points on the way, being such work as may be carried on without occupying the traveled way, brings such way outside of the limits of the employer's premises.

An employee going upon the traveled way, not held to be the premises of his employer, is exposed to the same risk to which any pedestrian in the same position would have been exposed.

The hazards involved in so travelling have no relation to his employment.

On appeal.    The petitioner upon an agreed statement of facts was awarded compensation under the Workmen's Compensation Act and from an affirming decree respondents appealed.    Appeal sustained.

The case fully appears in the opinion.

*Locke, Perkins & Williamson,* for petitioner.

*William H. Gulliver and William B. Mahoney,* for respondents.

SITTING:    WILSON, C. J., PHILBROOK, DUNN, DEASY, PATTANGALL, JJ.

PATTANGALL, J.    Workmen's Compensation Case.    Governed by provisions of Chap. 238.    P. L. 1919.    Appeal from decree awarding compensation.

*Facts agreed upon.* Petitioner was employed as a laborer by contractors engaged in constructing a highway between York Corner and Cape Neddick, a distance of about three miles. Petitioner lived at a camp owned by employer at a point about midway between the termini of the section of highway under construction. His hours of labor were from 7 A. M. to 6 P. M.

On August 20th the highway, so far as the travelled portion was concerned, had been completed and was opened for public travel. The concrete culvert endwalls, earth shoulders and guard rails were not completed and from August 20 to November 10 the contractors' force was employed in their construction.

On the morning of August 21, petitioner was assigned to assist a carpenter in work on a concrete endwall near Cape Neddick, about a mile and a half from the camp. At 6:45 A. M. on that day, he and the carpenter whom he was to assist were walking on the northerly side of the highway going toward the place of work. They were overtaken by one of their employers, going in the same direction in an automobile. He stopped his car and invited them to ride. Petitioner started from the northerly side of the highway toward the automobile, when he was struck by another automobile, not owned or operated by his employer, and received certain injuries. It was no part of the contract of hire that the employer should furnish petitioner transportation from the camp to his place of work.

On these facts the Commission found that the accident occurred on the employer's premises and that it arose out of and in the course of petitioner's employment.

We cannot agree with these conclusions.

The findings of the Commission are based on the theory that the entire three miles of highway, in all its parts, extending from York Corner to Cape Neddick constituted the employer's premises.

It might well be that such a section of highway, while under actual construction, could be so considered. But that is not the situation here. At the time of the accident, the portion of the highway over which travel was to pass was completed and had been opened for use by the public. There was no more work to be done upon it. The work that remained to be done under the employer's contract did not require petitioner or his fellow employees going upon the travelled way. They had no duties which called them to go upon it.

They were in the same position, while doing the remaining work in which they would have been had the highway been built the year before and their employer's contract limited to rounding up the shoulders of the road, building concrete endwalls to the culverts and placing guardrails at appropriate points along the way. Such work would have been carried on without occupying the travelled way and without interfering with traffic.

The two lines of work, i. e. the building of a highway over which travel might pass and the work which was to be done after the road was open to travel were not interdependent. They might have been made the subject of separate contracts between the state and this employer or have been awarded to separate contractors.

When the work had reached a point where the travelled portion of the highway was completed, the road opened for public travel and there was no longer necessity for employees to go upon it in the performance of the duty which they owed to their employer, that portion of the highway ceased to be included in the premises of the employer, even if it might be assumed to have been properly so included prior to that time.

Petitioner, then, was injured while on a public highway, on his way to his place of work. His injury was not received in the course of his employment. *Roberts' Case* 124 Me. 129. Nor did the injury arise out of his employment. *Paulaskes' Case* 126 Me. 32.

In going upon the travelled way, as he did and when he did, he was exposed to the same risk to which any pedestrian in the same position would have been exposed. The hazard had no relation to his employment.

"The causative danger must be peculiar to the work, not common to the neighborhood." *Westman's Case* 118 Me. 142.

*Appeal sustained.*