Glenys M. OLIVER

v.

WYANDOTTE INDUSTRIES CORPORATION &/or Travelers Insurance Company.

Supreme Judicial Court of Maine.

July 15, 1976.

Perkins & Townsend by Clinton B. Townsend, George W. Perkins, Skowhegan, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Robert F. Hanson, Lawrence P. Mahoney, Portland, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

This is an appeal by the employer Wyandotte Industries Corporation, and its insurance carrier Travelers Insurance Company, from an amended pro forma decree of the Superior Court (Kennebec County) affirming a March 25, 1975 decree of the Industrial Accident Commission awarding compensation for total incapacity to the employee, Glenys M. Oliver, petitioner for an award of compensation.

The Commission had previously denied the petitioner compensation because the injury alleged compensable had resulted from a motor vehicle collision occurring on a public street which petitioner had entered on leaving the premises of her employment. The Commission found none of the exceptions to the so-called "public street" rule, as delineated in *Rawson's Case,* 126 Me. 563, 140 A. 365 (1928), applicable and held petitioner's injury noncompensable on the rationale that *Rawson's Case* specified the *exclusive* circumstances in which injuries resulting from accidents occurring on a public street off the premises of the employer may be held compensable.

On the petitioner's appeal subjecting that first decision of the Commission to this Court's scrutiny, we rejected the Commission's view. In *Oliver v. Wyandotte Industries Corporation,* Me., 308 A.2d 860

(1973) (hereinafter designated "Oliver I") we decided that the exceptions mentioned in *Rawson's Case* are not the exclusive criteria of the compensability of injuries sustained by an employee in off-premises accidents occurring on a public street. We concluded that

> ". . . the Petitioner's accident would be compensable if it is found that a condition existed on the employer's premises which made hazardous the employee's exit into the public street and was in fact a cause of the employee being injured after she had reached the street." (p. 863)

Since in *Oliver I* the Commissioner's erroneous reliance on the exceptions in *Rawson's Case* as exclusive had led him to shut off petitioner's undertaking to present evidence which under our decision in *Oliver I* could entitle petitioner to an award of compensation, we remanded the case to the Commission for further hearing and determination.

On remand, the Commission awarded the petitioner compensation for total disability, and, now, the employer and insurance carrier are the appellants before this Court. They maintain: (1) the Commission erred in holding the petitioner's injury compensable, and (2) even if petitioner be entitled to an award of compensation, the Commission wrongly held petitioner's incapacity to be total.

*I. The Compensability Issue*

Evidence adduced at the hearing on remand supports the Commissioner's findings of fact, as facts found additional to those previously described in *Oliver I,* that:

(1) "[t]he private road ["Head of the Falls" located on the employer's premises] was icy and slippery";

(2) "there were snowbanks about six (6) feet high on each side of the Head of the Falls Road and said snowbanks extended into the intersection of the Falls Road and Front Street [the public street]";

(3) these snowbanks created a hazard to petitioner's egress from the premises of the employer on to Front Street because they obstructed petitioner's vision of traffic approaching along Front Street from petitioner's left; and (4) the hazard thus created contributed to the automobile collision causing petitioner's injury.

We conclude that the case now before us is precedentially governed by the decision in *Oliver I* since the Commissioner's controlling findings make plain that a hazard created by a condition existing on the employer's premises was a cause of petitioner's injury.[1] That the hazard involved was not unique to Wyandotte employees—whether because high snowbanks are a fact of life during Maine winters or because non-employees sometimes use Head of the Falls Road—is without legal consequence. It was the fact of petitioner's employment which required her to make the egress from the Head of the Falls Road situated on the premises of her employer onto the public street, Front Street. On this predicate the thrust of *Oliver I* is that a hazard to the employee's egress from her work situs created by a condition on the premises constituting the work situs is fairly attributable to the employment. Consequently, as is generally the rule in regard to dangers to employees arising from their employment, it is immaterial to the issue of compensability that

1. Although not essential to the determination of the compensability of petitioner's injury, another fact tends to strengthen petitioner's case. On the night in question petitioner's *sole* means of exit from her place of employment was via the Head of the Falls Road and Front Street, another access road to and from the Wyandotte Plant having been blocked by a parked trailer truck.

the dangers happen to be of a kind commonly confronted by non-employees.[2]

Notwithstanding, however, that (1) the snowbanks thus created an employment-related hazard to petitioner, and (2) the Commissioner found that this employment-related hazard causally contributed to the accident producing petitioner's injury, the employer and insurance carrier contend that the injury is not compensable because the hazard created by the snowbanks was not the "controllingly effective" cause of the accident in which petitioner was injured.[3]

The contention is unsound.

It has always been the law of this State that an injury arises out of employment when there exists *a* causal connection between conditions of the employee's employment and the injury received. *Sullivan's Case,* 128 Me. 353, 147 A. 431 (1929); *Washburn's Case,* 123 Me. 402, 123 A. 180 (1924); *Martin v. City of Biddeford,* 138 Me. 26, 20 A.2d 715 (1941). This rule was reiterated in *Oliver I* and underlay the decision of the Court that Mrs. Oliver's injury would be compensable if a hazard on the employer's premises "was in fact *a* cause of the employee being injured after she had reached the street." (p. 863) (emphasis supplied)

The Commissioner found, here,—in findings supported by the evidence—that an employment-related hazard contributed to petitioner's accident and injury. Since it is not legally requisite that the employment-related hazard be a *predominant* causational factor, the causational element of compensability was sufficiently established.

There was no error in the Commission's conclusion that petitioner's injury was compensable.

*II. The Extent of Petitioner's Incapacity*

The employer and insurance carrier attack as erroneous, because unsupported by evidence, the Commission's conclusion that petitioner was totally disabled from February 26, 1971 and such total disability was continuing as of the date of the Commission's decree and into the future.

In the workmen's compensation law of Maine two kinds of total incapacity to engage in remunerative employment are recognized: (1) actual physical inability to perform any substantial remunerative

2. In *Oliver I* the opinion written for the Court confined its analysis to a rationale of compensability predicated upon the existence of " . . . a condition . . . *on* the employer's premises which made hazardous the employee's exit into the public street." (p. 863) (emphasis supplied)

The concurring opinion in *Oliver I* introduced an alternative rationale of compensability which might be applicable even if a condition *off* the premises of the employer had caused hazards to the petitioner in discharging her need, as created by her employment, to go to, or from, her place of work. This was the so-called "special hazard" doctrine. In adverting to it, the concurring opinion was seeking to alert the Commission that even if it were to find *no on*-premises condition making hazardous petitioner's egress to the public street, the Commission should have in mind the "special hazard" doctrine, not dealt with by the opinion written for the Court, under which *off*-premises conditions creating hazards to the petitioner while she was engaged in going from the premises of her employment might be a basis of compensability.

Since, however, the Commissioner, on remand, has found that a condition originating *on* the premises of the employer made hazardous the employee's exit into the public street and causally contributed to petitioner's accident occurring in the public street, the case is controlled, without more, by the opinion written for the Court in *Oliver I.*

3. In thus arguing, respondents have seized upon a phrase which happened to be used in the discussion in the concurring opinion in *Oliver I* of the "special hazard" doctrine. As already clarified in n. 2, however, we have no concern, here, with the "special hazard" principle in light of the Commissioner's findings of fact that an *on-premises* condition created a hazard causally contributing to petitioner's injury.

work, or (2) a partial physical disability which, nevertheless, is of such nature that the injured employee can

> " 'perform no services other than those which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist . . ..' " *Bolduc v. Pioneer Plastics Corporation,* Me., 302 A.2d 577, 580 (1973) quoting 2 Larson, *The Law of Workmen's Compensation,* § 57.51

Petitioner's claim, here, presents each of these facets of total disability.

The evidence warrants the conclusion by the Commissioner that from February 26, 1971 to April 17, 1974 petitioner's actual physical condition rendered her unable to perform any substantial remunerative work and, therefore, petitioner was totally disabled during this period.

Commencing with April 17, 1974, however, the medical evidence shows that petitioner's actual physical disability had become such that she was physically able to perform some remunerative work. Hence, a determination whether petitioner remained totally disabled after April 17, 1974 became dependent upon whether the second basis for total incapacity, above mentioned, was operative—namely, whether, despite her physical ability to perform some remunerative work, no reasonably stable market existed for the kind of work which, in consequence of the accident, petitioner was able to perform. As to this, since the petitioner sought an award of compensation, petitioner had the ultimate burden to show by a preponderance of the evidence that she had made reasonable efforts to obtain work within her work capabilities and had failed to obtain any such work. *Bolduc v. Pioneer Plastics Corporation,* supra.

Our examination of the entire record in this case convinces us that petitioner has failed to meet this ultimate burden of proof reposing upon her to show total incapacity after April 17, 1974. In this particular respect the Commissioner's decree is in error and, as to it, the appeal of respondents must be sustained.

The Commissioner's finding of total incapacity after April 17, 1974 purports to be supported by the Commissioner's conclusion that "qualificational limitations" of petitioner were conjoined with her physical limitations to prevent her from performing any substantial remunerative work. Nothing of record, however, shows what these "qualificational limitations" were or discloses a basis on which the Commissioner reached, or could reach, his ultimate conclusion. Nothing appears concerning the prior employment history of petitioner (except the fact, insignificant for present purposes, that petitioner had worked as a "spooler" at Wyandotte for a few months prior to her injury), or indicating her educational background or the nature or scope of her skills.

With the record thus failing to disclose any "qualificational limitations" of petitioner the record affords no rational basis for a determination whether the efforts made by petitioner to find employment after her accident[4] were reasonable efforts to find remunerative work *within* petitioner's limitations, physical *as well as qualificational.*

Petitioner has, therefore, failed to meet the ultimate burden of proof reposing upon her, as a petitioner for an award of compensation, to show herself totally incapacitated after April 17, 1974. From that date

4. These efforts consisted of (1) petitioner's answering a newspaper advertisement of the Roosevelt Motel for waitresses and cashiers, and (2) applying to a concern *only* the name of which is shown by the record (Solon Manufacturing Company), the record being silent as to the kind of work done at that company or as to the company's need for employees.

on petitioner's proof shows her to be only partially incapacitated.

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Case remanded to the Industrial Accident Commission for: (1) entry of a Commission decree adjudicating petitioner totally incapacitated from February 26, 1971 to April 17, 1974 and, as such, entitled to be paid compensation during said period at the rate of $50.60 per week; and (2) further proceedings to fix the extent of petitioner's partial incapacity in terms of weekly compensation from and after April 17, 1974.

Further ordered that the Appellants Wyandotte Industries Corporation &/or Travelers Insurance Company pay to the Appellee Glenys M. Oliver $550 for her counsel fees, plus her actual out-of-pocket expenses of this appeal.

All Justices concurring.

WEATHERBEE, J., sat at argument and participated in consultation, but died before the opinion was adopted.